# Gibson *v.* Trowbridge Furniture Company.

*Bill in Equity by Creditors to set aside Fraudulent Conveyance by Insolvent Corporation.*

1. *Corporations; interest of stockholder in assets.*— Where one has contributed property to a corporation in exchange for its stock, such con-

[Gibson v. Trowbridge Furniture Co.]

tribution gives him no valid claim against the assets of the corporation until all the latter's debts are paid.

2. *Insolvent corporations; preferring debts due to directors.*—An insolvent corporation can not prefer a debt due to one of its board of directors. (McCLELLAN. J. dissenting.)

3. *Creditors' bill; adding parties complainant; waiver of objections.* An objection by a defendant to a "creditors' bill" that certain persons were allowed to become parties complainant on imperfect petitions comes too late when made after answer and submission for trial on the merits.

4. *Same; evidence on accounting before register.*—On an accounting before the register under a decree in favor of the complainants in a creditor's bill, the original bill, the amendments thereto, the petitions of other creditors upon which they were let in as co-complainants, the admissions contained in one defendant's answer, and the decrees *pro confesso* against the other defendants, are admissible as evidence.

5. *Evidence; proof of handwriting.*—Handwriting can not be proved by comparison ; nor can one who has merely seen writings which purported to be those of a certain person, but who is not shown to have personally communicated with such person respecting them, or to have acted upon them as genuine with the knowledge and acquiescense of such person, be permitted to testify to his belief as to the genuineness of said writings.

APPEAL from the City Court of Decatur.

Heard before the Hon. WM. H. SIMPSON.

The bill in this case was filed by the Trowbridge Furniture Company, a corporation, and several others, persons and corporations, claiming to be creditors at large of the Decatur Furniture Company, a corporation, against R. F. Gibson, said Decatur Furniture Company, and J. L. M. Estes; and sought to have set aside and annulled as fraudulent a transfer of property by said Decatur Furniture Company to said R. F. Gibson, to have a lien decreed in favor of the complainants on said property, and an accounting by said Gibson, *etc.* Gibson answered under oath, a sworn answer by him not being waived by the bill. Decrees *pro confesso* were taken against the other defendants. The case was tried upon the bill, as amended, and the sworn answer of Gibson, which agree substantially upon the following facts; In the latter part of 1888, or early in 1889, Gibson became the owner of a stock of furniture, and opened a retail furniture store in Decatur, Ala. The business was conducted in the name of "The Decatur Furniture Company," and the defendant Estes was employed as general manager. In July, 1889, Gibson, Estes, and some members of their families, filed a petition with the probate judge of Morgan county for the incorporation of the Decatur Furniture Company, and subscribed to the capital stock thereof, which was fixed at $4,000, Gibson and members of his family taking twenty shares of the par value of $100 each, and the Estes

[Gibson v. Trowbridge Furniture Co.]

family taking the remainder. Upon the organization of the corporation, Gibson was made president, and Estes general manager. Both were directors, elected for one year. On December 9, 1889, Gibson having acquired all the stock issued to members of his family, sold the twenty shares to the company, and received from the company its note, signed also by the Estes' for $2704, to cover the price of the stock, and also money claimed to be due to him on account of loans made by him to the Esteses and assumed by the Decatur Furniture company, and also on loans made to the company. This note not being paid at maturity, Gibson took in payment thereof or thereon the stock of furniture belonging to the company, and all, or a large part of, its notes, accounts, *etc.*, and appropriated the property, which his answer states was worth about $1,800, to his own use. It is not clear from Gibson's answer whether the sale of his stock was made to the Esteses or to the company itself. But it is clear that the corporation was one of the makers of the note he received, and the property of the corporation was taken by him in payment on the note. On final hearing, the court granted the complainants the relief prayed for, and ordered a reference to the register to ascertain the amounts of the debts due to the complainants, including the creditors who had come in on petitions, and the value of the assets transferred to and converted by said Gibson; who, on such reference, reserved numerous exceptions to the rulings of the register in admitting evidence. The appellant Gibson now assigns as error the final decree and the several rulings of the court which are referred to in the opinion.

KYLE & SKEGGS, for the appellants.

E. W. GODBEY, *contra.*

STONE, C. J.—This is the second appeal in this case. *Gibson v. Trowbridge Furniture Co.,* 93 Ala. 579. In the former appeal the question presented for decision was the decretal order of the chancellor, overruling the demurrer to the bill as amended. We affirmed the chancellor's decree. The present appeal is from the final decree rendered in the cause.

Considering this case in the light most favorable to appellant which the record facts permit us to consider it in, we find no error in the chancellor's decree, granting relief to the complainants. So far as Gibson's claim is rested on his alleged contribution of furniture as the subscription price

[Gibson v. Trowbridge Furniture Co.]

or consideration paid for the stock he subscribed for in the corporation, we declared in the former appeal that such payment or contribution furnished him no valid claim against the assets of the corporation, until all the latter's debts are paid.—93 Ala. 579. We adhere to that opinion, and need not add to what we there said.

But Gibson, in his answer, avers that, while the corporation was in active business, he, on two several occasions, lent it money. If that be true, he became a creditor of the corporation to the extent of the loan. The corporation, however, became insolvent, and he, being a director, could not purchase its stock in trade and close its operations, and thereby make himself a preferred creditor. Nor could he accomplish that end by the means resorted to, as set up in his answer. What can not be done directly can not be done indirectly. In the recent case of *Corey v. Wadsworth*, (in manuscript) we considered this question so fully, that we do not propose to add anything to what is there said. The assets of the insolvent corporation had become so far a trust fund in the hands of the managing body as that by no artifice could a member of the governing board have himself preferred over other creditors of the insolvent corporation.

If it be claimed that Gibson, being a creditor to the extent of his loan, has the right to share ratably with the other creditors in the distribution of the assets, our answer must be that, even if he be guilty of no actual fraud and bad faith in the premises, as he avers, the present record is not in such conditon as that we can consider the question. Not only is there no proof of the justness of his claim, but the record fails to show that either in the pleadings or other proceedings was any information given that such claim was, or would be set up. It can not be set up for the first time in this court.

The objection is raised here that the City Court erred in allowing some of the petitioning creditors to be made parties complainant on the imperfect petitions they filed. If that objection had been raised before, or at the time of, the answer, there would possibly be something in it. Some one or more of the petitions is possibly defective, in that the averments of the bill are not in terms adopted by anything therein contained. But after answer, and submission for trial on the merits, the objection comes too late. The original bill in this case is in the names of several simple contract creditors, and it is what is known as a creditor's bill. It was filed March 13, 1890. The amendment of the bill found in the record was filed in open court June 23, 1890.

[Gibson v. Trowbridge Furniture Co.]

Petitions by other creditors to be allowed to come in and participate in the prosecution and fruits of the suit were severally filed March 26, 1890, April 28, 1890, and July 2, 1891. Defendant Gibson—the only one who answered, and who complains of error to his prejudice—filed his answer August 26, 1891. Decrees *pro confesso* on personal service were taken against the other defendants September 10, 1891. The cause was submitted for final decree in October, 1891, and final decree rendered on the 23rd day of that month. Report of the register confirmed November 11, 1894. Gibson was required to answer on oath, which he did; and in his answer admitted many of the averments of the bill to be true. Other creditors, as we have shown, came in by petition, and were made parties complainant by orders of court, all granted and dated before Gibson answered the bill. He admitted the corporation was indebted to each of the petitioning creditors. And the decrees *pro confesso* against the other defendants were taken long after the grant of the orders making the said petitioners parties complainant.

The remaining errors assigned which we consider it necessary to notice relate to the proceedings before the register in taking the account, and his report thereon. When this case was submitted to the chancellor for final decree, among the instruments of evidence for complainants which the register noted were the original bill, the amended bill, the petitions of other creditors to be let in as co-complainants, the admissions contained in Gibson's sworn answer, and the decrees *pro confesso* against the other defendants. No exceptions were filed to any of this testimony ; nor should they have been sustained, if any had been filed. The pleadings —bills and petitions—were evidence necessary to a proper understanding of the admissions in Gibson's sworn answer, and they were equally necessary against the other defendants, to show what charges were therein made, the truth of which they had admitted, by suffering decrees *pro confesso* to be entered up against them. So, when the register entered upon the account, these same instruments of evidence were again offered by complainants. The defendants filed objections to them, the objections were overruled, and exceptions reserved. For reasons stated above, the City Court did not err in overruling these exceptions.

In one respect the register fell into an error, and the exception on that account ought to have been sustained. We refer to the proof of the handwriting of Estes by the witness Kyle. In this State handwriting can not be proved by comparison.— *Givens v. State*, 5 Ala. 747 ; *Bishop v. State*, 30 Ala.

[Gibson v. Trowbridge Furniture Co.]

34. Nor was the testimony of Godbey brought within the rule. It is not pretended he had seen Estes write, and so the question of his competency to testify as to the genuineness of the signatures to the writings offered was narrowed to the second of the rules on this subject.—1 Greenleaf on Evidence, § 577, states the rule thus: "The second mode is, from having seen letters, bills, or other documents, purporting to be the handwriting of the party, and having afterwards *personally communicated* with him respecting them; *or acted upon them* as his, the party having known and acquiesced in such acts, founded upon their supposed genuineness; or, by such adoption of them into the *ordinary business transactions* of life, as induces a reasonable presumption of their being his own writings." See also 1 Whar. Ev. § 708. The testimony of Godbey, on which he was permitted to testify to his belief that certain papers were in Estes' handwriting, was as follows: "In the year 1889 I saw considerable writing of J. L. M. Estes, and I think I am acquainted with his handwriting." On this he was, against objection and exception, permitted to testify to his "belief" that certain writings were those of Estes. Our interpretation of the language of this witness is that he had seen writings which purported to be those of Estes. We reach this conclusion, because if the witness had known more, we must presume it would have been called out. No sufficient predicate was laid for calling out the belief of this witness.

The small credit claimed in reduction of the debt to the Trowbridge Furniture Co., it would seem, from any thing we can discover in the record, ought to have been allowed; as that debit rested for its proof against Gibson on the admissions of his answer.

The decree confirming the report of the register is reversed, and a re-taking of the account is ordered.

Reversed and remanded.

McCLELLAN, J., dissenting.