# O'Bear Jewelry Co. *et al.* v. Volfer & Co. *et al.*

*Bill in Equity by Creditors of an Insolvent Corporation to have Enforced a Trust in the Assets of the Corporation for the Benefit of all its Creditors.*

1. *Insolvent corporations; assets not a trust fund.*—The assets of an insolvent corporation do not constitute a trust fund or estate in the hands of the corporation, as trustee for the benefit of its creditors, as *cestuis que trust*, in the proper and essential meaning of those terms, so that insolvency alone will place the assets beyond the power of disposition by the corporation or its officers in preference of one or more creditors to the exclusions of others; or in such sort that a court of chancery, by virtue of its general jurisdiction over trust estates, will take charge of and administer the assets of such corporation at the suit of its creditors, in the absence of some recognized principle of equity jurisdiction. (*Corey v. Wadsworth*, 99 Ala. 68; *Goodyear Rubber Co. v. Scott & Co.*, 96 Ala. 439, and *Gibson v. Trowbridge Furniture Co.*, 96 Ala. 357, in so far as inconsistent with principle here announced, are overruled.)

2. *Same; multifariousness of bill filed by creditors.*—Where the creditors of an insolvent corporation, on the theory that the assets of said corporation constituted a trust fund, file a bill against the stockholders to compel them to pay the balance due upon the stock sub-

scriptions, against the assignee of the corporation for a settlement of his trust, and against a bank to compel it to pay into court money rightly belonging to the corporation which it had collected before the assignment and paid over to the individual stockholders, and to have judgment which the corporation confessed in favor of the bank, just before making the assignment, declared a part of the assignment, and to compel the bank to refund the money it had received in satisfaction of such judgment, and to have all the assets thus brought together administered for the equal benefit of the creditors of the corporation; such bill is bad for multifariousness and can not be maintained.

APPEAL from the City Court of Birmingham, in Equity.

Heard before the Hon. W. W. WILKERSON.

The facts of the case are sufficiently stated in the opinion.

WARD & JOHN and DICKINSON & KERR, for appellants. 1. The bill is not single in its object; and the parties defendant are sued on not joint but several accounts. The bill embraces two or more distinct subjects; it contains several distinct grounds of suits in equity, and is, therefore, bad for multifariousness.—1 Daniel Ch. Prac., 334, note 1; *American R. & C. Co. v. Linn*, 93 Ala. 610; 3 Brick. Dig., 388 *et seq.;* 15 Amer. & Eng. Encyc. of Law, 947.

2. It does not appear from any allegation of the bill that when the insurance money was paid, that, though insolvent, the O'Bear Jewelry Company was not doing business. As an insolvent natural person might, the insolvent corporation could prefer a creditor by a debt in money or property.—*Goodyear Rubber Co. v. Scott Co.*, 96 Ala. 439.

3. The assets of a corporation do not constitute such a trust fund as to prevent the corporation, although insolvent, from doing business, buying and selling, or preferring a creditor.—*Goodyear Rubber Co. v. Scott Co.*, 96 Ala. 439. The whole theory of the bill is that the corporate assets being a trust fund, all who received payment must refund. . This is not the law.—*Hospes v. N. W. Man'f'g Co.*, 31 Amer. St. Rep. 637, s. c., 48 Minn. 174. The property of a corporation is a trust fund for the payment of its debts, in the sense that when it is lawfully dissolved all its creditors are entitled in equity

to have their debts paid out of such property before any distribution thereof is made among the stockholders, and also in the sense that any conveyance of the corporation without authority of law, and in fraud of existing creditors, is void as against them.—*Wabash &c. R. Co. v. Ham*, 114 U. S. 587; *Clark v. Bever*, 139 U. S. 96.

ARNOLD & EVANS and JOHN VARY, *contra.*—1. The object of the bill is to collect in and have properly administered a trust fund. It is by the *cestuis que trust* of a trust fund. They were and are *cestuis que trust* of the entire fund. Not one part more than another, but of the whole fund. That is to say the entire capital stock and the entire assets of a corporation is a trust fund for creditors, primarily, and then for stockholders. The depositors of this trust fund may be many, but the fund is single, every part of which is impressed with the same trust and subject to the same claim. This bill is to restore this fund. Therefore, the creditors, the equitable owners of this fund, may call for its restoration by any and from any person who ought to contribute it.—2 Morawetz Corporations, §§ 789, 790, 794; Story's Eq. Pl., § 285a, 286; *Brinckerhoff v. Brown*, 6 Johns. Ch. 149; *Fellows v. Fellows*, 4 Cowan 682; 15 Amer. Dec. 428, note.

2. The case of *Brinckerhoff v. Brown*, 6 Johns. Ch. 149, may perhaps be considered a leading case on the subject. It is referred to and furnishes the text for nearly all the text writers on the subject, and has been almost universally approved and quoted, and repeatedly so in Alabama, and it is very much like this case. There the bill was against a corporation for the same purpose as this bill and was similar in almost all things.—*Planter's Bank v. Walker*, 7 Ala. 950; *Allen v. R. R. Co.*, 11 Ala. 447; *Stone v. Ins. Co.*, 52 Ala. 592; *County v. Timberlake*, 54 Ala. 413; *Lehman v. Myer*, 67 Ala. 405; *Holt v. Wilson*, 75 Ala. 67; *Bolman v. Lohman*, 74 Ala. 510; *Handley v. Heflin*, 84 Ala. 603.

McCLELLAN, J.—The present bill is filed by Volfer & Co. and others, as judgment creditors of the O'Bear Jewelry Co., a corporation. Said corporation, R. D. Johnston, The Alabama National Bank, G. S. O'Bear, Jr., W. G. O'Bear, F. C. O'Bear and W. B. Copeland

are made parties defendant. It is made to appear by the bill that the O'Bears and Copeland organized said corporation with a proposed or nominal capital of twenty-five thousand dollars divided into two hundred and fifty shares of one hundred dollars each. Of these G. S. O'Bear subscribed for eighty shares, or eight thousand dollars to be paid by transferring to the corporation a certain stock of jewelry, store fixtures, &c. W. G. O'Bear subscribed for thirty shares, or three thousand dollars, to be paid by transferring to the corporation a lot of miscellaneous jewelry, a list of which was, according to the report of the commissioners, in their hands. Mrs. F. C. O'Bear subscribed for twenty shares, or two thousand dollars, with the privilege of paying for the same by delivering to the company certain gold watches (28) and diamond rings (3). And W. B. Copeland subscribed for twenty shares to be paid in money. The corporation organized in February, 1888, and a report was made to the probate judge's office setting forth that said subscribers for stock had made the transfers of property and the cash payments as provided for in the terms of their respective subscriptions. The bill avers that said Copeland did not and has never paid the two thousand dollars subscribed by him, but still owes the same; that the stock of goods, &c., which was paid to and accepted by the commissioners in satisfaction of G. S. O'Bear's subscription of eight thousand dollars, was not worth more than four thousand, was fraudulently accepted in full payment, and that said G. S. still owes the balance of four thousand dollars; that the lot of jewelry with which W. G. O'Bear was to pay his subscription of three thousand dollars, and which was so accepted, was worth only one thousand dollars, and hence that W. G. still owes the balance of two thousand dollars; that Mrs. F. C. O'Bear did not pay the amount subscribed by her either in property or money, and still owes the same. Said G. S. O'Bear and W. B. Copeland were the commissioners appointed by the probate judge to open books of subscription to the capital of said corporation; and the bill charges "that the pretense and representation that said W. B. Copeland had paid his subscription in cash, and that Mrs. F. C. O'Bear had paid her subscription by the transfer of watches and three diamond rings, when in truth no such payments were made, and the excessive

valuation of the property transferred by G. S. and W. G. O'Bear, were knowingly and intentionally made by collusion and agreement among said incorporators, and constituted fraud upon persons who might become creditors of said corporation." The corporation upon organization commenced and continued business until December, 1888, or January, 1889, when most of its stock of goods was destroyed by fire, and since then it has not carried on its business. While carrying on its business, the corporation bought large quantities of merchandise and at the time of the fire had on hand goods amounting in value to many thousand dollars, which were insured to a large amount, and it was agreed that the insurance companies should pay the corporation the sum of seven thousand dollars on account of said loss. At the time of said fire the corporation was indebted to complainants in the several sums stated in the bill, and to divers other persons, including the Alabama National Bank, to which it owed twenty-five hundred dollars, and was then and ever since has been confessedly insolvent, the bulk of its assets, after the fire, consisting of the sums owing it by the insurance companies. The bill further avers: "That for the purpose of preventing complainants and other creditors of said corporation from subjecting said insurance money to the payment of their debts, and to save the same, or as much thereof as possible, to said incorporators, said company assigned and transferred the policies of insurance held by it to the Alabama National Bank before the dispute which had arisen between it and said insurance companies had been settled, and complainants charge that for said transfer there was no consideration except that said corporation was indebted to said bank in the sum of twenty-five hundred dollars, as aforesaid, and that said bank received in cash on account of said policies a sum not less than seven thousand dollars, and, after appropriating to itself a sufficiency to pay the debt due said bank, it paid over the balance amounting to the sum of forty-five hundred dollars to the persons who composed said corporation or to some of them or for their personal account." The bill further avers: "Complainants are advised that said [insurance] money, as well as all the other property of said corporation, was a trust fund, and, after said fire and the insolvency of said corporation, belonged to

said corporation in trust for the payment of the debts thereof, and that the collection thereof and the payment by said bank of the proceeds to or on account of the individual corporators was a mis-application of said funds for which said bank, which (as your orators charge) knew the insolvent condition of said corporation as well as the said individual corporators, was and is liable to the creditors of said corporation.'' It is further shown that on September 4, 1889, said corporation appeared in court and confessed judgment in favor of said bank for one thousand and seventy-five dollars on a complaint then filed, and immediately after the confession and registration of this judgment, the Jewelry Company executed a general assignment to R. D. Johnston for the benefit of its creditors ; and it is charged that said confession of judgment and assignment were parts of one and the same transaction, and should be so decreed and administered ; and that said assignee took possession of the property of said corporation, converted the same into money, and out of such proceeds paid said judgment to the bank, and still has a small sum in his hands.

The theory upon which complainants seek relief is thus set forth in the bill : ''Complainants are advised that the entire assets of said corporation constitute a trust fund for creditors, and that all persons who in any wise knowingly participate in the unlawful appropriation of said trust fund or any part thereof will be required in equity to restore the same. That the subscribers to said capital stock will be compelled to pay the differences between their respective subscriptions and the actual, reasonable value of the property transferred by them in pretended payment thereof. And that such subscribers as have made no payment or transfer of property will be required full payment to make. That said confession of judgment will be held a part and parcel of said general assignment and said Alabama National Bank will be required to pay the sum received by it in payment thereof, as aforesaid, for the benefit of creditors, and that said bank will be further required to account for the proceeds of the insurance policies received by it as aforesaid, and to restore so much thereof as said bank paid to the individuals composing said corporation or for their use.''

The prayer is that a receiver of the property and effects

[O'Bear Jewelry Co. *et al.* v. Volfer & Co. *et al.*]

of The O'Bear Jewelry Co. be appointed and authorized to receive the moneys and effects thereof to which it may be decreed entitled under the allegations of the bill; that said subscribers to the capital stock of said corporation be required to pay to the court the amounts which they respectively subscribed, less the actual reasonable value of such property as they transferred to said corporation; that said Alabama National Bank be required to pay into court, or to the receiver to be appointed, the amount received by it on account of said judgment, as also the sum received by it as the proceeds of the policies of insurance over and above the debt owing it, and that the said assignee, R. D. Johnston, be required to file in court his accounts as such assignee, and to pay into court or to the receiver all moneys in his hands, and to turn over all property and effects of said corporation; and finally that all the assets thus brought together be administered for the equal benefit of the creditors of said corporation.

The Alabama National Bank demurred to the bill, and among other grounds assigned the following:

1. There is a misjoinder of parties defendant to said bill of complaint in this that this defendant alleged to be a preferred creditor is improperly joined as a defendant with stockholders of the O'Bear Jewelry Company, who are charged with not having legally paid up their subscriptions to the capital stock of the O'Bear Jewelry Company.

2. The said bill of complaint is multifarious in that complainants seek in the same suit to have an accounting of the trust created by the alleged deed of assignment made by the O'Bear Jewelry Company, and to collect unpaid subscriptions of the shareholders of the O'Bear Jewelry Company alleged to be fraudulently withheld.

3. The said bill of complaint is multifarious in that it joins with the claims against the shareholders of the O'Bear Jewelry Company for unpaid subscriptions, claims against this defendant for money alleged to have been improperly paid to this defendant to satisfy a judgment confessed alleged to be part of a general assignment made to R. D. Johnston, for the creditors of said O'Bear Jewelry Company, and money alleged to have been fraudulently received from insurance and fraudulently paid to the individual stockholders of the O'Bear Jewelry Company.

4.    The said bill of complaint is multifarious in that it seeks to collect unpaid subscriptions to the capital stock of the O'Bear Jewelry Company, and also to settle a trust, and to have this defendant account for money fraudulently paid to the individual shareholders of the O'Bear Jewelry Company.

5.    The said bill of complaint is further multifarious in that it seeks a settlement of a trust, and also to set aside a fraudulent disposition of the property of the O'Bear Jewelry Company.

7.    This defendant demurs to Sec. 28 of said bill of complaint, for that it is therein alleged that the assets of said O'Bear Jewelry Company constituted a trust fund for the benefit of all creditors alike, when in law the O'Bear Jewelry Company could legally prefer a creditor.

And W. B. Copeland separately demurred to the bill assigning the following, among other, grounds :

1.    There is a misjoinder of parties defendant to the said bill, said Copeland being made defendant with others for the result of transactions with which the said bill does not show he was connected or any way responsible.

2.    The bill is multifarious as to him, because he is by the bill brought in to defend on various matters with a large portion of which the bill does not show he had any knowledge, participation or connection.

4.    There is no equity in the bill, because the bill brings in parties as defendants in regard to matters with which they are not connected, and the relief sought is not the same against all of the defendants.

The chancellor overruled these, as well as all other, assignments of demurrer, and from his decree in that behalf this appeal is prosecuted.

As we have seen, it is expressly averred in the bill itself that the theory upon which alone complainants seek relief is that the assets of the O'Bear Jewelry corporation constitute a trust fund or estate, that said corporation was the trustee thereof, and the complainants and the other creditors were the *cestuis que trust* thereof, and that the chancery court, by virtue of its general jurisdiction over trust estates, was competent to take charge of this fund upon the invocation of such *cestuis que trust*, restore and protect it by collecting moneys belonging to it from all sources, however diverse, and dissociated

with each other, they might be, and to ultimately settle the trust by dividing the fund ratably among the beneficiaries.

The respondents by their demurrers insist that said assets do not constitute a trust fund in the sense necessary to the maintenance of the bill, exhibited, as it is, against parties who have nothing, and are not chargeable with any wrong, in common, but whose acts, claims and attitudes in respect of and toward the corporation are entirely distinct and independent; and hence they say that the bill is multifarious. And in the arguments submitted in this court the decree below is attempted to be supported solely and expressly upon this theory of the spoliation of a trust estate. So that the main, if not only, question presented on this appeal is whether the assets of an insolvent corporation constitute a trust fund for its creditors in the proper and essential meaning of those terms.

This whole idea, that the property of insolvent corporations is held by them in trust for creditors—is a trust estate in their hands—and to be administered by chancery as such, originated in a *dictum* of Judge Story in *Wood v. Dummer*, 3 Mason, 308. It had no existence at common law, and has none to this day in the law of England; but is distinctly a creation of some courts in this country, and known in jurisdictions where it obtains as the "American doctrine." This court has quite recently adopted it, and held in the cases of *Corey v. Wadsworth*, 99 Ala. 68, *Goodyear Rubber Co. v. Scott & Co.*, 96 Ala. 439, and *Gibson v. Trowbridge Furniture Co.*, Ib. 357, that the assets of an insolvent corporation is impressed with a trust in the hands of the company, in favor of its creditors first, and then in favor of its stockholders. The present writer dissented from the opinion and conclusion of the court in each of those cases. To his mind, there is nothing clearer in principle than the proposition that the property of a corporation, solvent or insolvent, bears identically the same relation to the creditors of such corporation as the property of an individual or copartnership, solvent or insolvent, sustains to the creditors of the individual or partnership; and is or is not to be impressed with a trust character upon the same circumstances and under the same conditions in the first case as in the latter two. Within the limits of its char-

ter, every corporation authorized to hold and dispose of property at all, is entitled, and this generally by the very terms of the statute creating it, to hold and dispose of it as a natural person might hold and dispose of it under the laws of the land. As said by Judge Bradley, in *Graham v. Railroad Co.*, 102 U. S. 148, ''In law, a corporation is as distinct a being as an individual is, and is entitled to hold property (if not contrary to its charter) as absolutely as an individual can hold it. Its estate is the same, its interest is the same, its possession is the same.'' An individual not indebted may give his property away, provided the gift is not actuated by a purpose to defeat future creditors. So can a partnership. And so also undoubtedly can a corporation if the gift would not be violative of its charter. An individual owing debts, but solvent, can not give away his property to the prejudice of existing creditors. Neither can a partnership, nor a corporation. An insolvent individual and an insolvent partnership may—or might have before the act of 1892-93—sell and convey all of his or its property to one creditor in payment of his debt, the valuation being fair, the price adequate and no benefit being reserved to the debtor. And so, as expressly ruled by this court in *Goodyear Rubber Co. v. Scott & Co.*, 96 Ala. 439, and *Gibson v. Trowbridge Furniture Co.*, 96 Ala. 357, *supra*, following the decisions in other States where this ''American doctrine'' obtains, may an insolvent corporation sell and convey all its property or apply all its assets to the payment of one creditor leaving nothing for others. Was such a disposition of a *trust estate* ever permitted by any court in any land under any system of jurisprudence? I am unable to conceive of it. Certain things have heretofore been generally supposed to be essential to trust estates. There must be property held in trust. There must be a trustee, or the chancery court in the place of a trustee. There must be beneficiaries—*cestuis que trust*. The property belongs in equity to the *cestuis que trust*, they are beneficially interested in it or entitled to it. The legal title is in the trustee. Now when the beneficiaries constitute a class and take or are entitled in equity to take the property held in trust as members of a class, such as the heirs of A. B., or the legatees named in the will of C. D., or as *creditors*, nobody, except the votaries of this ''American doctrine,'' has ever supposed that one member of the

class, all members of which are equally interested in the
trust property, would be entitled at the election of the
trustee to take the whole estate.   This is at war with all
essential notions of trusts and equitable jurisdiction and
administration of them.   It may be argued, however,
that these decisions are wrong in this particular, but
sound in respect of the declaration that the property of
insolvent corporations is trust property.   But the de-
cisions are not wrong in this particular; the soundness
of the proposition they assert has long been recognized
by this court.—*Allen v. Railroad Co.*, 11 Ala. 437 ; *Goodwin
v. McGehee*, 15 Ala. 232.   Given the power, which can
not be denied, to hold and dispose of property as an in-
dividual, and the well settled doctrine in this State, and
generally, that the insolvent individual may transfer all
his property in payment of one or more, to the exclusion
of all other, debts, it follows in a logical sequence, which
nothing but the illogical exercise of the sheer power of
courts of last resort can break, that an insolvent corpo-
ration may in like manner prefer one creditor to the
exclusion and defeat of all others.   With this un-
doubted power in the corporation or its officers,
it would seem to be most manifest that neither the
corporation nor its officers could possibly sustain the re-
lation of a trustee to other creditors in respect of corpo-
rate assets, which they are under no duty at law or in
equity to administer for the benefit of those who are
called the *cestuis que trust*.

But apart from this consideration, which indeed was not
in my mind when I felt constrained to dissent in the first
of the cases on the question decided by this court, viz.,
*Corey v. Wadsworth*, 99 Ala. 68,   I can not, upon well
settled and elementary general principles and definitions,
see my way to an acceptance of this so-called doctrine.
All trusts are of two kinds : expressed and implied.   It
is, of course, nowhere pretended the relations between
an insolvent corporation and its creditors constitute an
express trust.   All implied trusts are of two kinds : re-
sulting and constructive.   "Resulting trusts," says Mr.
Pomeroy, "arise where the legal estate is disposed of or
acquired, not fraudulently or in violation of any fiduciary
duty, but the intent in theory of equity appears or is in-
ferred or assumed from the terms of the disposition, or
from the accompanying facts and circumstances, that the

beneficial interest is not to go with the legal title."—1
Pom. Eq. Jur., § 155. And they are said to arise under
the following several states of fact: (1), where the pur-
chaser of an estate pays the purchase money, and takes
title in the name of a third person; (2), where a person
standing in a fiduciary relation uses fiduciary funds to
purchase property, and takes the title in his own name;
(3), where an estate is conveyed upon trusts which fail,
either in whole or in part, or are not declared, or are il-
legal; and, (4), where a conveyance is made without
consideration, and it appears from the circumstances
that the grantee was not intended to take beneficially.—
10 Am. & Eng. Encyc. of Law, pp. 4, 5. It requires no
discussion to the demonstration of the impossibility of
referring this "American doctrine" of trusts for corpo-
ration creditors to the head of resulting trusts.

All constructive trusts are of three kinds, or arise from
one or the other of three conditions of fact: *first*, trusts
arising from actual fraud; *second*, trusts which arise from
constructive fraud; and, *third*, trusts that arise from
some equitable principle independent of the existence of
fraud.—10 Am. & Eng. Encyc. of Law, p. 60. As there
is no fraud, actual or constructive, involved in the naked
fact that a corporation is insolvent—has creditors
which it is without assets to pay in full—and this fact
is the base for all the superstructure of this doctrine of
trust for its creditors, it cannot be conceived, and, I
suppose, has never been contended, that such trust is
referable to either the first or second heads of construct-
ive trusts. And it is the conclusion of so high an au-
thority as Mr Pomeroy, that the third classification of
constructive trusts stated above has no existence disso-
ciated from actual and constructive fraud. It is his
opinion, "that all instances of constructive trusts prop-
erly so called may be referred to what equity denomi-
nates fraud, either actual or constructive, as an essen-
tial element, and as their final source. Even in that
single class where equity proceeds upon the maxim that
an intention to fulfill an obligation should be imputed,
and assumes that the purchaser intended to act in pursu-
ance of his fiduciary duty, the notion of fraud is not in-
volved, simply because it is not absolutely necessary
under the circumstances; the existence of the trust
might in all cases of this class be referred to construct-

ive fraud. This notion of fraud enters into the conception in all its possible degrees. Certain species of the constructive trusts arise from actual fraud; many others spring from the violation of some positive fiduicary obligation; in all the remaining instances there is, latent perhaps, but none the less real, the necessary element of that unconscientious conduct which equity calls constructive fraud.''—2 Pom. Eq. Jur., § 1044. If this view be adopted, the relation between an insolvent corporation and its creditors is excluded from every possible category of constructive trusts for the reason, or by virtue of the fact, that that relation involves no fraud whatever; and as that relation is, as I have seen, the sole ground for the doctrine of trusts in cases like this, the doctrine is unsound, unsupported in principle or reason, and should not be upheld by any court.

But if we adopt the view first stated above, that constructive trusts may arise by force of some equitable principle independent of the existence of fraud, actual or constructive, and which seems also to be the opinion of Mr. Perry (1 Perry on Trusts, § 168), the same conclusion is equally inevitable. Eliminating the element of fraud from the consideration, there still remains as an essential predicate for the existence of a trust by construction of law, some unconscientious conduct on the part of the person to be held as trustee *in invitum*, or some unconscionable result through means or under circumstances which bring the transaction within some recognized title of equity jurisprudence, as, for instance, where a tenant in common buys in an outstanding term for his own benefit, he is trustee for his co-tenant, and where a conveyance has been made through ignorance, accident or mistake, the grantee will be the trustee in a constructive trust for the grantor. Thus, wherever one is placed in such relation to another that he becomes interested with or for him in property or business, he is prohibited from acquiring rights in that property or business antagonistic to the person with whom he is associated, as, for illustration, if one partner, or other person occupying a fiduciary relation, renew a lease theretofore held by the partnership, or by the person renewing and another in confidential relation to him, in his own name and with his own funds, he will be a trustee for his associate by construction of law. And so, where by acci-

dent, ignorance or mistake more land is embraced in a conveyance than was bargained and sold, a constructive trust arises in favor of the grantor for the excess.—10 Am. & Eng. Encyc. of Law, p. 80.

But in all these cases, in all cases of constructive trusts where it is said by some authorities chancery proceeds without regard to fraud, relief is granted upon some acknowledged ground of equitable jurisdiction, and administered by holding the wrongdoer to account as a trustee. There must be a confidential relation and unconscientious conduct on the part of one party to, and in abuse of, that relation, or there must be some ignorance, accident, mistake, or the like, against the unconscionable consequences of which equity will on general principles grant relief, else there can be no constructive trust.

That the relation of debtor and creditor is not of a confidential character, there can of course, be no doubt. 'Tis absurd to say that the creation of that relation involves aught of accident, mistake or ignorance. / That a debtor has property of his creditor which in equity and good conscience belongs to the creditor, because the debt contracted in its sale has not been paid, there is no warrant for saying. Equally unwarranted is the idea that in equity all the property of a debtor who has become insolvent belongs to the creditor, and is held by the debtor in trust for him. And this idea of *ownership* in the *cestui que trust* underlies the whole doctrine of trusts of every description. In all trusts the legal title is in one, the equitable ownership in another. A mere debt against one who has property, whether solvent or insolvent, is not ownership, nor is a right to charge a fund, or a lien upon it, the beneficial ownership of it. Confessedly the property and assets of a solvent corporation do not constitute a trust fund for its creditors. Can it be possible that the mere passing of a corporation from a state of solvency to a state of insolvency, amounts to a declaration of an express trust for creditors, or to a resulting trust upon the theory that title to the assets of the concern should have been made to the creditors? Or is it conceivable that this mutation from the one condition to the other does violence to a confidential relation which never existed, and hence is a constructive trust? Or that this mere change of inherent conditions is the vestiture in the corporation through the igno-

rance, or mistake of the creditor, or through mistake, or through fraud, of a greater title, or title to more property than was contemplated and intended, when before the change, confessedly, the corporation had the absolute and indefeasible title free from all trusts to all its property and assets, and when the change itself involves nothing of fraud, of abuse of fiduciary relations, of ignorance, or mistake or accident? The learned judges who uphold this "American doctrine" may find something in these conditions of fact upon which to construct a trust, but I confess my utter inability to follow their arguments or to see with their eyes. Nothing is clearer to my humble judgment than that the insolvency of a corporation—the existence of a corporation with property and debts, the property being insufficient to pay the debts—is not within any definition of any trust known to equity jurisprudence. The creditors of such corporation have the same rights against it as they have against an insolvent partnership, or an insolvent individual, debtor and no other or more. They do not at law or in equity own the property of the one or the other; but the property of each is a fund for the payment of debts in the sense that neither can give it away, or dispose of it with intent to hinder, delay or defraud creditors. The property of the individual cannot be appropriated to his own use to the exclusion of his creditors under any cover whatever. The property of the partnership cannot be appropriated to the personal use of the partners, or in payment of the debts of the individuals composing the firm, to the exclusion of partnership creditors under any pretense whatever. And so, the property of the corporation cannot be diverted to the use of the stockholders to the exclusion of creditors under any circumstances whatever. The powers and limitations upon the powers of an insolvent corporation to deal with its property are precisely the same in all essentials, as the powers and limitations upon the powers of insolvent individuals and insolvent partnerships. The estate of the debtor in each class is essentially the same—the corporation, no less than the individual and the partnership, is at law and in equity the owner of its property. The rights, remedies and estates of creditors of each are also the same. They do not *own* the property of their corporation debtor, or any

interest in it, in equity or at law, any more than they own the property of their individual or partnership debtor. Their right against each is the same, to have their debts paid out of the property, but this right is not that of a *cestui que trust*, but, whether the property is corporate or individual or partnership, it is the right of a creditor simply. Confessedly even this right may be defeated as to any particular creditors by a sale of the property in payment of another creditor, or by its being taken on execution in favor of another, or even by its sale by the debtor—corporation, individual or partnership—to a third person, and this although such purchaser have notice of the insolvency of the debtor. All which, as I have seen, would be impossible if the property constituted a trust estate, with the corporation as trustee and the creditors as *cestuis que trust*, for in such case all who take with notice of the insolvency would take subject to the trust and themselves be held as trustees *in invitum*.

Not only are the rights of individual, partnership and corporation creditors the same against their insolvent debtors' estates, and each different in the same way from the rights of *cestuis que trust*, but the remedies of a corporation creditor, in the absence of a statute, are precisely those of a creditor of an individual or partnership. The remedy of each class of creditors may upon a given state of facts be in equity; but when this is so, it is not because of any supposed trust, but upon some recognized ground of equity jurisprudence, as where the debtor has fraudulently transferred his or its property, and chancery is invoked to set aside the transfer and subject the property. And when chancery has thus assumed jurisdiction, it will administer the estate for the equal benefit of all creditors before it, and to that end the court becomes a sort of trustee *sub modo*, in the administration of the property, but not with any reference to the character of the estate, as being held in trust or otherwise, before and at the time jurisdiction attached.

Not all the publicists and courts in this country, nor the ablest of them, countenance this so-called American doctrine. Mr. Pomeroy expressly repudiates it. He says: "In applying this principle [of constructive trusts], care should be taken to distinguish between actual trusts and those relations which are only trusts by

way of metaphor; between persons who are true trustees holding the legal title for a beneficial *owner*, and those who simply occupy a position which is analogous in some respects to that of a trustee. The use of these terms to designate relations and parties which have no essential element in common with actual trusts and trustees can only produce confusion and inaccuracy. * * * * There are certain relations which are spoken of as trusts, and as constituting a species of constructive trusts, but which are not, in any true and complete sense, trusts, and can only be called so by way of analogy or metaphor. Since they lack the element of fraud, they do not, in any view, properly belong to the division of constructive trusts. * * * * The survivors of a partnership are called trustees for the estate of the deceased partner, with respect to his share of the firm property. This expression is mostly metaphorical; there is certainly nothing in the relation resembling a constructive trust. Extending the analogy still further, courts regard partnership property, after an insolvency or dissolution of the firm, and in the proceeding for winding up its affairs, as a trust fund for the benefit of creditors, and the capital stock and other property of private corporations, especially after their dissolution, is treated as a trust fund in favor of creditors. These statements may be sufficiently accurate as strong modes of expressing the doctrine that such property is a fund sacredly set apart for the payment of partnership and corporation creditors, before it can be appropriated to the use of individual partners or corporators, *and that the creditors have a lien upon it* for their own security; but it is plain that no constructive trust can arise in favor of the creditors, unless the partners or directors, through fraud or a breach of fiduciary duty, wrongfully appropriate the property, and acquire the legal title to it in their own names, and thus place it beyond the reach of creditors through ordinary legal means." And in a note to the above text the learned author says: These "cases are not constructive trusts, and are mentioned simply for the purposes of completeness, and to distinguish between correct and mistaken conceptions."—2 Pomeroy's Eq. Jur., §§ 1044, 1045.

And the highest and ablest court in the land, the Supreme Court of the United States, has quite recently gone

[O'Bear Jewelry Co. *et al.* v. Volfer & Co. *et al.*]

over this whole subject, considered exhaustively all its own decisions and *dicta* upon it,. and in an able opinion by Mr. Justice Brewer repudiated the idea that the property of an insolvent corporation is a trust fund or estate held by the corporation or its officers for creditors as *cestuis que trust.* Judge Brewer quotes the language of Judge Bradley in *Graham v. Railroad Co.*, 102 U. S. 148, to the effect that when a corporation becomes insolvent, a court of equity, at the instance of proper parties, "will then make its funds trust funds, which, in other circumstances, are as much the absolute property of the corporation as any man's property is his," and says of that case, that "all that it decides is, that when a court of equity does take into its possession the assets of an insolvent corporation, it will administer them on the theory that they in equity belong to the creditors and stockholders rather than to the corporation itself." And he proceeds further on to say : "It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or. stockholder ;" and he concludes his opinion upon this subject as follows : "The same idea of equitable lien and trust exists to some extent in the case of partnership property. Whenever, a partnership· becoming insolvent, a court of equity takes possession of its property, it recognizes the fact that in equity the partnership creditors have a right to payment out of those funds in preference to individual creditors, as well as superior to any claims of the partners themselves. And the partnership property is, therefore, sometimes said, not inaptly, to be held in trust for the partnership creditors, or, that they have an equitable lien on such property. Yet, all that is meant by such expressions is the existence of an equitable right which will be enforced whenever a court of equity, at the instance of a proper party and in a proper proceeding, has taken possession of the assets. It is never understood that there is a specific lien, or a direct trust.

"A party may deal with a corporation in respect to its property in the same manner as with an individual owner, and with no greater danger of being held to have received into his possession property burdened with a trust or lien. The officers of a corporation act in a fidu-

[O'Bear Jewelry Co. *et al.* v. Volfer & Co. *et al.*]

ciary capacity in respect to its property in their hands, and may be called to an account for fraud or sometimes even mere mismanagement in respect thereto ; but as between itself and its creditors the corporation is simply a debtor, and does not hold its property in trust, or subject to a lien in their favor, in any other sense than does an individual debtor. That is certainly the general rule, and if there be any exceptions thereto they are not presented by any of the facts in this case. Neither the insolvency of the corporation, nor the execution of an illegal trust deed, nor the failure to collect in full all stock subscriptions, nor, all together, gave to these simple contract creditors any lien upon the property of the corporation, nor charged any direct trust thereon."—*Hollins v. Briarfield Coal & Iron Co.*, 150 U. S. 371, 381–386.

The Supreme Court of Minnesota, in an able opinion by MITCHELL, Justice, also repudiates this idea that the property of an insolvent corporation is a trust fund. Of it it has this to say : ''This 'trust-fund' doctrine, commonly called the 'American doctrine,' has given rise to much confusion of ideas as to its real meaning, and much conflict of decision in its application. To such an extent has this been the case that many have questioned the accuracy of the phrase, as well as doubted the necessity or expediency of inventing any such doctrine. While a convenient phrase to express a certain general idea, it is not sufficiently precise or accurate to constitute a safe foundation upon which to build a system of legal rules. The doctrine was invented by Justice STORY in *Wood v. Dummer*, 3 Mason, 308, which called for no such invention, the fact in that case being that a bank divided up two-thirds of its capital among its stockholders without providing funds sufficient to pay its outstanding bill-holders. Upon old and familiar principles, this was a fraud on creditors. Evidently all that the eminent jurist meant by the doctrine was that corporate property must be first appropriated to the payment of the debts of the company before there can be any distribution of it among stockholders—a proposition that is sound, upon the plainest principles of common honesty. In *Fogg v. Blair*, 133 U. S. 534, 541, it is said that this is all the doctrine means. The expression used in *Wood v. Dummer*, 3 Mason, 308, has, however, been taken up as a new discovery, which furnished

[O'Bear Jewelry Co. *et al.* v Volfer & Co. *et al.*]

a solution of every question on the subject. The phrase that 'the capital of a corporation constitutes a trust fund for the benefit of creditors' is misleading. Corporate property is not held in trust, in any proper sense of the term. A trust implies two estates or interests—one equitable and one legal; one person, as trustee, holding the legal title, while another, as the *cestui que trust,* has the beneficial interest. Absolute control and power of disposition are inconsisent with the idea of a trust. The capital of a corporation is its property. It has the whole beneficial interest in it, as well as the legal title. It may use the income and profits of it, and sell and dispose of it, the same as a natural person. It is a trustee for its creditors in the same sense and to the same extent as a natural person, but no further."—*Hospes v. Northwestern Manufacturing Co.*, 48 Minn. 174, s. c. 31 Am. St. Rep. 637, 641–2.

The Supreme Court of Michigan is equally pronounced against this "trust fund" doctrine, and in support of the right of a corporation, solvent or insolvent, to hold and deal with its property precisely as if it were an individual. That court, in an opinion by MONTGOMERY, J., says: "Nor is it the law of this State that, as soon as a corpotion becomes insolvent, the directors of the corporation become trustees for all the creditors alike, in such sense as to prevent their giving valid security by way of preference to one of the stockholders or directors. We are aware that the decisions in the various States are not uniform as to the question, and that a number of very eminent text-writers have deprecated a state of the law which admits of such preferences. But, to adopt the language of DILLON, J., in *Buell v. Buckingham,* 16 Iowa, 284, this condition of the law 'may constitute a good legislative reason for giving *pro rata* to outside creditors, but the legislature must furnish the remedy.' In the case referred to it was held that being an officer of the corporation did not deprive Buell of the right to enter into competition with the other creditors, and run a race of diligence with them. See, also, *Hallam v. Hotel Co.,* 56 Iowa. 179, 9 N. W. Rep. 111; *Garrett v. Plow Co.,* (Iowa,) 29 N. W. Rep. 395; *Smith v. Skeary,* 47 Conn. 54; *Catlin v. Bank,* 6 Conn. 233; *Bankiny Co. v. Claghorn,* 1 Speer Eq. 545; *Bank v. Whittle,* 78 Va. 739; *Leavitt v. Mining Co.,* 3 Utah, 265, 1 Pac.

Rep. 356; *Whitwell v. Warner*, 20 Vt. 444; *Holt v. Bennett*, (Mass.), 16 N. E. Rep. 6; *Oil Co. v. Marbury*, 91 U. S. 587; *Wilkinson v. Bauerle*, (N. J. Err. & App.) 7 Atl. Rep. 514. The rule in this State has, we think, been established since the case of *Town v. Bank*, 2 Doug. (Mich.) 530, that a corporation may, in the absence of legislative restriction, deal with its property precisely as an individual may, and may prefer one creditor over another; and hence that the assets do not become a trust fund, for *pro rata* distribution among all its creditors, until such time as steps are taken under the 'Winding Up Act,' chapter 282, How. St. This is the substance of the rule stated in both *Town v. Bank*, 2 Doug. 530, and *Turnbull v. Lumber Co.* And in the later case of *Kendall v. Bishop*, a mortgage had been given to secure the directors of the corporation, and to secure paper upon which they were indorsers. The question under consideration was fully discussed in the briefs of counsel, and it was said by Justice CAMPBELL: 'There seems to be no reason why one honest creditor should be on a worse footing than another, and we do not find in our law any such distinction.—*Bank of Montreal v. Potts Salt & Lumber Co.*, 51 N. W. Rep. 512. And to like effect are the cases cited in the foregoing quotations.

In line with this view, Judge CALDWELL, in *Gould v. L. R. & C. Ry. Co.*, 52 Fed. Rep. 683, said: ''It is undoubtedly true that the property of a corporation is, in one sense, a trust fund for the payment of its debts; but this rule means no more than that the property of a corporation cannot be distributed among its stockholders; or applied to any purpose foreign to the legitimate business of the corporation, until its debts are paid. The rule, so far as it relates to the payment of debts, is satisfied whenever the property of the corporation is applied to the payment of any of its *bona fide* debts.''

Other authorities might be collated on the question under consideration and in support of the view I have taken of it; but the foregoing will suffice, it is thought, for the purposes of this opinion. Upon them and by the force of the elementary principles of trust estates, I am impelled to the conclusion that the property of an insolvent corporation is not a trust fund or estate accurately speaking, or in any sense other than that when

the chancery court takes possession and control of such property upon some general principle of equity jurisdiction, wholly independent of any idea that the property constitutes a trust fund, it will be administered for the equal benefit of creditors. It follows that the bill cannot stand against the demurrers for multifariousness unless that objection can be met upon some other consideration than the trust character of the corporation property and assets, which is alone and expressly, both in the averments of the bill itself and in the argument of counsel, relied on to support the decree overruling the demurrers. I do not think the objection can be met upon any other ground. There is no connection between several of the matters brought forward by the bill, and the defendants attempted to be charged in respect of some of these matters have no interest whatever in others. For instance: The Alabama National Bank did not participate in the wrongs committed upon the corporation in respect of the subscriptions to its stock by the O'Bears and Copeland, and it is not interested in the present effort to right those wrongs. Again, the bill seeks the settlement of the trust created by the assignment to R. D. Johnston and to compel the bank to pay into court money which it owed the corporation, or held belonging to the corporation, and paid over to the stockholders of the corporation, which constituted no part of and had no connection with the assignment to Johnston. And equally dissociated is the effort of the bill to have an accounting by the assignee from its purpose to collect unpaid subscriptions from stockholders. And so in respect of the purpose of the bill to have the judgment in favor of the bank declared a part of the assignment and to have the bank refund the amount it received in satisfaction thereof: this claim is wholly foreign to the relief sought against the bank as to the insurance money paid to the O'Bears and Copeland, and also to the relief sought against the subscribers to the stock. In other words and in brief, the bill, in my opinion, stands upon the same plane in respect of multifariousness as if it had been filed against an insolvent individual debtor, who was wasting or fraudulently disposing of his property, and against his assignee for the benefit of creditors, a creditor to whom he had confessed judgment which his assignee had paid as a lien on the property assigned, against a person who,

having assets of the insolvent debtor in his hands, had paid the same to third persons so they could not be reached by creditors, and against other persons who, in equity, owed money to the debtor defendant. In such case—and no more in this—there would be no relation or connection between the defendants, or the rights asserted against them respectively either in the character of their wrongs or defaults, or in the character of the estate they had despoiled; and recovery against each would be had, if allowed at all, not upon any idea of conserving a fund which the court, because of its trust character, had the right to protect and restore, but solely as enforcing several money demands from several defendants in one and the same action, in which also the trustee in the assignment would be brought to account on considerations and in respect of matters with which the claims against some of the other defendants had no connection.

In preparing the foregoing opinion, the writer assumed to express his individual views only because of decisions of this court referred to above which take a different view as to the assets of an insolvent corporation being a trust fund. This opinion has now, however, been concurred in by my associates, and stands as the opinion of the court. The cases of *Corey v. Wadsworth*, 99 Ala. 68; *Goodyear Rubber Co. v. Scott & Co.*, 96 Ala. 439, and *Gibson v. Trowbridge Furniture Co.*, 96 Ala. 357, *supra*, in so far as they are inconsistent with the views and conclusion we now express, are overruled.

The decree overruling the demurrers for multifariousness is reversed, and a decree will be here entered sustaining said assignments of demurrer.

Reversed, rendered and remanded.

COLEMAN, J.—In the case of *Corey v. Wadsworth*, 99 Ala. 68, the facts were that Corey, a director and the president of the Building Supply Company, a corporation, became with other officers, bound as guarantor of a debt of six thousand dollars due from the corporation to the Exchange Bank; that the corporation became insolvent, and under these circumstances, the corporation sold and conveyed to Corey a large amount of its assets, exceeding in value the amount of the debt due the Exchange Bank, in consideration that Corey would pay the

debt of the insolvent corporation, for which he was already bound. The bill was filed to set aside and annul as fraudulent and void the sale and transfer of the property under the circumstances stated. The case was brought before us by appeal from the ruling of the chancery court overruling a demurrer to the bill. The real question presented by the appeal was whether an insolvent corporation, acting through its governing board, can sell and transfer its assets to a member of the governing board (in this case a director and its president), in satisfaction and payment of an unsecured debt due from the insolvent corporation to such member, and thus give him a preference over other creditors of the insolvent corporation. This, as I understand the case made by the bill, was the real question of merit, which called for an adjudication by this court. Much was said in the opinion of the court unnecessary to a decision of the question, and which should be regarded as *dicta.* So far as the conclusion of the court held that the transaction as averred in the bill was fraudulent and void against its creditors, in my opinion, it was correct; and I do not understand the opinion in the case at bar to militate against the principle of law reached in the conclusion of *Corey v. Wadsworth,* which was necessary to a decission of the case.

The case of *Goodyear Rubber Co. v. Geo. D. Scott Co.,* 96 Ala. 439, though published earlier, in fact was rendered subsequent to that of *Corey v. Wadsworth, supra,* decided but one question, and that was "that the transfer by a director and managing officer of an insolvent corporation, without authority of the board of directors, of all its property, in consideration of a debt of the corporation for which he was liable as guarantor or indorser, or joint maker of a note given therefor, is invalid as to other creditors, being in effect a preference of himself." I do not understand the case at bar to combat the soundness of the rule declared in this case. In the opinion of the *Goodyear Rubber Co. Case,* page 442, it is said : "We did not, however, go to the length of holding [in the case of *Corey v. Wadsworth*] that directors of an insolvent corporation are so completely hampered by the trust relation they sustain, as to disable them from paying or securing some creditors in preference to and at the expense of others to whom the corporation is indebted. *

[Town of Brewton v. Spira.]

\* \* \* The great weight of authority is the other way, and we are not inclined to run counter to them." The same rule was declared in *Gibson v. Trowbridge Furniture Co.*, 96 Ala. 357.

I do not understand the case at bar to overrule any principle of law decided in either of the foregoing cases, which were necessary to a decision of those cases, but that these cases are overruled only so far as the opinion stated that the assets of a corporation became a trust fund for the benefit of creditors, and were placed beyond the power of disposition or control of the governing board, whenever and as soon as the corporation became insolvent, and that insolvency of the corporation alone gave a court of equity jurisdiction to administer the assets as trust property. Such statements were *dicta*, and do not express the opinion of the court.