# King *v*. The State.

## *Forgery.*

(Decided May 22, 1913.  62 South. 374.)

1. *Evidence; Handwriting; Comparison.*—Where another paper proven or admitted to be genuine is properly in the case and before the court, and the forgery of another paper is at issue, a comparison may be instituted by the jury between the signature of the genuine paper and the signature of the disputed one, but not between the alleged forged paper, and an extraneous paper, although the extraneous paper may be shown to be genuine.

2. *Same.*—On direct examination, a witness cannot be required to write his name in the presence of the court and jury in order that there may be a comparison between such signature, and the alleged forged signature, as that would be permitting him to make evidence for himself; under some circumstances, a witness who has denied a signature may be compelled on cross-examination to write his name for purpose of comparison.

3. *Same; Expert Testimony; Handwriting.*—An expert may compare two signatures and express his opinion as to the genuineness of the one claimed to be forged, but a non-expert cannot express an opinion on the genuineness solely from a comparison, but may express such opinion from his knowledge of the handwriting with which he is familiar.

4. *Forgery; Evidence.*—Where the prosecution was for forging a check, a genuine check made by the alleged drawer of the forged check was not admissible in evidence.

5. *Same.*—Although the checks themselves are not admissible, it was competent for the state to introduce evidence tending to show

that defendant had opportunity to observe the alleged drawer's check, and that the drawer had, before the time of the alleged forgery, given defendant genuine checks.

6. *Same; Jury Question.*—The evidence examined and held sufficient to carry the case to the jury.

7. *Same; Indictment.*—Under an indictment for uttering a forged check, knowing it to be forged, a defendant could be convicted if some one else forged the check, and defendant knowing it to be forged uttered it as true.

8. *Appeal and Error; Harmless Error; Evidence.*—Where the issue was whether or not the alleged drawer signed a check, and there was conflict in the evidence between defendant and the drawer, it was highly prejudicial to defendant to permit the state to support the drawer's evidence by expert testimony that the check was forged based on a comparison of the writing of the forged check with a genuine check not properly admitted.

APPEAL from Montgomery City Court.

Heard before Hon. ARMSTEAD BROWN.

William King was convicted of forgery and he appeals. Reversed and remanded.

HILL, HILL, WHITING & STERN, for appellant. The court was in error in admitting checks given by the drawer and shown to be genuine for the purpose of comparison.—*Griffin v. Working Women's Assn.*, 151 Ala. 597; *Williams v. State*, 61 Ala. 33. The court was therefore in error in permitting witness to compare the alleged forged instrument with the genuine check, and such evidence is highly prejudicial.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. It is competent to show possession by defendant of other instruments than the one charged in the indictment to have been forged.—*McDonald v. State*, 83 Ala. 46; *Williams v. State*, 126 Ala. 50; *Wright v. State*, 138 Ala. 69. It was not error to permit the witness Thomason to testify as an expert.—*Tally v. Gross*, 124 Ala. 567; *Glover v. Moore*, 104 Ala. 222. It was not necessary that the in-

strument alleged to have been forged be introduced in evidence. It need only be produced.—*Butler v. State,* 22 Ala. 43; *Manoway v. State,* 44 Ala. 375.

. THOMAS, J.—Whatever may be those obtaining elsewhere on the subject, the following rules governing the method and manner of proving the handwriting of a person when it is in issue have been firmly established in the jurisprudence of this state by a long line of decisions from our Supreme Court, from one of which, summarizing these rules and citing many of the authorities which support them, we quote, to wit:

. "(1) When the forgery of a paper is in issue, and another paper admitted or proved to be genuine is properly in the case and before the court, a comparison may be instituted between the signature of the genuine paper and the signature of the disputed one. The comparison may be made by the jury trying the case for the purpose of determining the question of forgery vel non of the disputed paper. An expert witness may also make a comparison in such case of the two signatures, and after such comparison express his opinion as to the genuineness of the paper in dispute.

. . "(2) *A comparison of handwriting may not be instituted between the writing that is in question and extraneous papers, although such extraneous papers may be shown* to be genuine. A writing, although admitted to be genuine, when not otherwise relevant and admissible in evidence, is not admissible for the sole purpose of instituting a comparison of handwriting, whether by the jury trying the case or for the expression of an opinion by one examined as an expert witness.

.. "(3) A witness who is not an expert may not express an opinion as to the genuineness of a signature solely from a comparison of handwriting; but a witness,

though not an expert, may express his opinion as to the genuineness of a signature, where such witness knows the handwriting of the party from having corresponded with him or from having seen him write" (*Griffin v. Working Woman's Association,* 151 Ala. 603, 44 South. 605), or from having seen letters, bills, or other documents, purporting to be the handwriting of the party, which the witness has acted upon as being genuine, and that to the knowledge and with the acquiescence of the party, or when they have been adopted by the party in the ordinary business transactions of life in such a way as to induce a reasonable presumption of their being his own writings (*Gibson v. Trowbridge Furniture Co.,* 96 Ala. 362, 11 South. 365). But "in this state," as said by Judge Stone, "we do not permit extraneous papers to be presented before the jury or court, or shown to a witness, that he may institute a comparison between such paper, though admitted to be genuine, and the one in controversy."—*Moon v. Crowder,* 72 Ala. 88.

The law does not even permit a witness on direct examination to write his name or otherwise in the presence of the court and jury in order that a comparison may be instituted by the jury or an expert between such signature or writing and that of an instrument in issue, for the reason that such would be allowing a party to make evidence for himself; though there are cases where on cross-examination a witness who has denied his alleged signature may be compelled to write his name for the purpose of permitting a comparison, with a view to his impeachment.—*Williams v. State,* 61 Ala. 41; *Griffin v. State,* 90 Ala. 600, 8 South. 670.

The defendant in the present case, William King, was charged with forging the name of Carter Green, as drawer, to a certain check for $10 on the First National Bank of Montgomery, of date July 23, 1912, payable

to defendant. This alleged forged check, indorsed by defendant, was introduced in evidence, and the said Carter Green, as a witness for the state, testified with respect thereto that his name signed to said check as the drawer was not signed thereto by him or by any one authorized by him. The solicitor here exhibited to the witness another check for $10, purporting to have been signed by the witness, payable to defendant, and bearing date of June 12, 1912; and over the strenuous protest and objection of the defendant's counsel, properly raising the point we are here to consider, the witness was allowed to testify that this check was genuine, and the solicitor was permitted to introduce it in evidence, and to prove by a subsequent witness—an alleged expert— after he had examined and compared the two checks— the alleged forged one with the alleged genuine one— that the respective signatures of the purported drawer, said Carter Green, were in a different handwriting, etc. The court erred in permitting the genuine check to be introduced in evidence. It was clearly immaterial to any issue in the case and, not being properly in evidence, it could not properly be allowed to serve as the foundation for a comparison by an expert or the jury of the handwriting in it with that of the alleged forged check.—Authorities supra.

It was, however, permissible for the state to prove, for the purpose of showing that the defendant had had an opportunity of observing the witness Carter Green's signature, the fact that the latter had, prior to the time of the alleged forgery, given the defendant a check or a number of checks; but the checks themselves were not material to any inquiry in the case, and their introduc-' tion could serve only to uselessly multiply the issues.

Excluding, however, all the illegal evidence introduced by the state, there was left enough legal evidence to

warrant a submission of the case to the jury; the indictment containing not only a count charging forgery, but also a count charging the defendant with publishing or uttering as true a forged instrument, knowing it to be forged. Hence whether defendant forged Carter Green's name to the check or not, yet if some one else did do so, and defendant, with knowledge of the fact, uttered it as true, he could be convicted under the indictment. Green swore, as said, that he did not sign the check, nor authorize any one else to do so. The check was payable to "the order of cash." The cashier of the bank upon which it was drawn testified that defendant presented it there for payment, that it bore no indorsement, and that defendant then indorsed it in order to get it cashed. If the jury believed all this evidence, it, with the reasonable inferences it affords, would well justify a verdict of guilty. The court therefore committed no error in refusing the affirmative charge requested by defendant.

However, the real issue in the case was, did or not Carter Green sign the check? he swearing that he did not and the defendant swearing that he did, and that he delivered it to defendant in part payment of a loan. Under such circumstances, to permit the state to bolster up the testimony of Carter Green, with the testimony of an expert witness, whose opinion in support thereof was based solely upon a comparison of handwriting in the alleged forged check with that of one not properly in evidence, even though genuine, was highly prejudicial to the legal rights of the defendant, and may have resulted in his conviction when otherwise he might have been acquitted.

The judgment of conviction is therefore reversed.

Reversed and remanded.