CAMDEN *v*. BENNETT.

Opinion delivered May 29, 1897.

PRESUMPTION AS TO TITLE—PAYMENT OF PURCHASE-MONEY.—One who pays the purchase-money of land is, in equity, supposed to intend to become the owner of the property, and, in the absence of proof of such intention, the beneficial title follows such supposed intention, although the legal title may be taken in the name of another. (Page 160.)

ADVANCEMENT—TAKING DEED TO BROTHER.—There being no legal obligation to support one's brother, no presumption of an advancement arises

where one pays the purchase money of land and takes deed to his brother. (Page 160.)

RESULTING TRUST—SUBSEQUENT DECLARATION.—Where one who paid the purchase money of land, taking deed to another, intended at the time to hold the beneficial interest in the land for himself, his subsequent declaration that he expected either to get his money or to hold the land would not divest his equitable title to the land. (Page 161.)

SAME—SUFFICIENCY OF EVIDENCE TO ESTABLISH.—To establish a resulting trust *pro tanto* in favor of one claiming to have paid a part of the purchase money of certain land, where title was taken in another, it is incumbent upon the former to show by evidence full, clear and convincing what part of the purchase price of the land was paid by him. (Page 161.)

Appeal from Benton Circuit Court in Chancery.

EDWARD S. McDANIEL, Judge.

STATEMENT BY THE COURT.

This action involves the title to a forty-acre tract of land in Benton county. The land was formerly owned by David B. Neal. In the year 1870 he agreed to sell it to Richard Bennett, but Neal died before the contract was performed by either party. Afterwards Richard Bennett told his son James that if he would pay for the land he might have it. The appellee, James Bennett, thereupon about 1872 purchased the land from the heirs of said Neal, of whom there were ten, and had the title conveyed to his brother, Tom Bennett. The consideration to be paid was twenty-five dollars to each one of the ten heirs. Levi Bennett, a brother of James and Tom Bennett, paid for one of these shares. There was some conflict in the evidence as to whether the remainder of the purchase price was all paid by James Bennett or not. This forty-acre tract adjoined the tract of land upon which Richard Bennett, the father, had his home, with whom lived his son, Tom Bennett, an invalid, partially blind but capable of manual labor, and two unmarried daughters. James and Levi Bennett also lived most of the time with their father, and assisted to support the family.

After the purchase of the tract in controversy, it was enclosed with a fence by James and Levi Bennett. The three brothers improved and cultivated it, and used it for the benefit of the family. Tom Bennett died in 1885, and his father,

Richard Bennett, died in 1893. Afterwards the appellants, two married daughters of Richard Bennett and sisters of Tom Bennett, brought this suit to recover a one-fourth interest in the land in controversy. They alleged that the land belonged to Tom Bennett; that he left surviving his father and eight brothers and sisters; that the land descended, for life to his father; that after the death of the father the remainder in fee descended to the eight brothers and sisters of Thomas Bennett as tenants in common; that the appellee, James Bennett, unlawfully held possession of all of said land. The appellee, James Bennett, for answer denied that Thomas Bennett was the owner of the land; alleged that he (appellee) had paid all of the purchase price for the land, except twenty-five dollars, which was paid by his brother Levi; that the conveyance, for convenience, was made by the Neal heirs to Thomas Bennett, but that a trust resulted to appellee by reason of the fact that he had paid the purchase money except $25. As to the payment of the purchase money, appellee was questioned as follows: Ques. "At whose request did you make the payments?" Ans. "I made the payments at the request of my father, Richard Bennett, who said he couldn't pay for it, and if I would pay for it, I might have the land." Ques. "What was said between you and Tom Bennett as to when he would pay you back the money?" Ans. "There wasn't anything said at that time." Ques. "When did you expect him to pay you?" Ans. "I didn't think anything about that. I told him he could stay on it, that the land would make him a living if he went blind." * * * * * * * * Ques. "Did you, in making this payment for the land, intend it to be a gift to Tom?" Ans. "No, I did not." Ques. "Was it intended or understood or anything said about the money being a loan?" Ans. "No, there was not."

The case was transferred to the equity side of the docket. The circuit judge found that James Bennett paid the purchase money for nine of the ten shares; that Levi paid the other share; that, although the conveyance was made to Thomas Bennett, yet that it was not intended as a gift; that a trust resulted to James Bennett for nine-tenths of the land, and that the holding of Thomas was in trust for James Bennett. He therefore

gave judgment in favor of James Bennett, and ordered that his title to nine-tenths of the land be quieted. From which judgment an appeal was taken.

*L. H. McGill*, for appellants.

1. In cases where a resulting trust arises from the payment of the purchase money of land, if some *definite* aliquot part is paid, a trust may be declared *pro tanto.* 1 Perry, Trusts, § 132; 10 Am. & Eng. Enc. Law, 15, 16; 51 Am. Dec. 753. But there must be no uncertainty as to the proportion of the property to which the trust extends. 17 Wall. 44; 30 Me. 121. Any doubt or uncertainty is fatal. Tiedeman, Real Prop. § 500, note 1, p. 478.

2. A resulting trust arises when the consideration is paid by one person, and the legal title is taken in the name of a stranger. See 2 Story, Eq. Jur. § 1201; 1 Perry, Trusts, § 126; 2 Paige, Ch. 217; 2 Johns. Ch. 405. The character of the conveyance must be impressed upon the original transaction, and the money must be paid in the character of purchaser; if paid as a loan, no trust will result. 10 Am. & Eng. Enc. Law, 24; 1 Perry, Trusts, §§ 132, 133; Underhill, Trusts, 163; 51 Am. Dec. 753–4; 40 Ark. 62; 29 *id.* 612. No declaration or agreement subsequent to the original transaction will raise a trust. 2 Watts, 323; 4 Md. 465; 40 Ark. 62. The trust results from the *acts* of the parties; the law presumes the intent. See 1 Perry, Trusts, § 134; 1 So. Dak. 388; 103 Mass. 488; 10 Am. & Eng. Enc. Law, 5; 51 Am. Dec. 752, and notes. No resulting trust arises in opposition to the intention of the parties; it is a question of intention. 10 Am. & Eng. Enc. Law, pp. 13, 14; 1 Perry, Trusts, § 130; Underhill, Trusts, 164, note 5; 27 Ark. 77; 47 *id.* 111; 40 *id.* 62; 54 *id.* 499; 30 Me. 121. The burden is on the party seeking to establish the trust, and the evidence must be clear, full and satisfactory. 10 Am. & Eng. Enc. Law, 29; 1 Perry, Trusts, § 129; 51 Am. Dec. 759; 4 Md. 465; 30 Me. 121; 44 Ark. 365; 37 S. W. Rep. 890; Underhill on Trusts, etc., 162, note 1; 22 S. W. Rep. 634; 48 Ark. 173; 1 Johns. Ch. 582. Appellee relies upon an express trust, which is clearly within the statute of frauds. Sand. & H. Dig., § 3480; 45 Ark. 481; 57 *id.* 632; 37 S. W. Rep. 890.

3.  Appellee is barred by laches and great lapse of time. Perry, Trusts, § 141; 41 Ark. 301; 12 Peters, 241.

*C. M. Rice*, for appellee.

There was no loan in this case, nor was there a gift. It was a clear case of resulting trust. 9 S. W. Rep. 468; *ib.* 95. The evidence is conclusive that appellee paid for all the interests of the Neal heirs except one. The payment of the purchase money raises a resulting trust. 40 Ark. 62. The payment being shown, the law implies the intention, which must be overcome by proof. 47 Ark. 115; Story, Eng. Jur., §§ 1195, 1197, 1201; 10 Am. & Eng. Enc. Law, p. 5, etc.; Perry, Trusts, §§ 124, 126, 143, 139; 86 Mo. 594; Underhill, Trusts, pp. 150, 160; 42 Ark. 511; See also 9 S. W. Rep. 468; 16 Pac. Rep. 766; 18 N. E. Rep. 334; 31 *id.* 310. Parol evidence is admissible. 15 Ark. 519; Perry, Trusts, §§ 112, 116; 15 N. E. Rep. 241; 16 *id.* 636; 40 Ark. 62. The clearest and most positive proof is not required. 7 S. W. Rep. 497. There is no bar by laches or lapse of time. Perry, Trusts, § 141; 12 Am. & Eng. Enc. Law, p. 533; 28 Ohio St. 568, 580; 37 N. J. Eq. 130; 12 Am. & Eng. Enc. Law, p. 544, and notes, 559, 569. The statute of frauds is a personal defense, and cannot be pleaded by a stranger to the transaction. 105 Ind. 17; 4 N. E. Rep. 281; 2 *id.* 325; 101 Ind. 522; 114 U. S. 394; 71 Ala. 62; 49 Ills. 289; 115 Mass. 508; 60 Miss. 34; 100 N. Y. 140. If the trustee recognizes the trust as still continuing, no mere delay is bar. 27 Am. & Eng. Enc. Law, pp. 104, 105; 39 Fed. 292; 33 Kas. 515. There must be a disavowal of the trust. 51 Ark. 351; 14 N. H. 352; 59 Cal. 142.

RIDDICK, J. (after stating the facts.) This case turns mainly upon certain questions of fact: First. Did James Bennett purchase and pay for the land which was conveyed to his brother Thomas Bennett? Second. If he paid the consideration, did he intend that his brother should take the beneficial interest therein, as well as the legal title, or did he intend a benefit to himself?

As to the first question, it is beyond dispute that Thomas Bennett, to whom the conveyance was made, paid no part of the consideration, and that the greater part of the purchase

price was paid by James Bennett. The only room for doubt about this matter is whether James Bennett paid nine-tenths of the purchase price, as the circuit judge found, or only seven-tenths of it. But in either event a trust *pro tanto* would result in his favor, unless his intention was that his brother, and not himself, should take the beneficial interest. *Watson* v. *Murray*, 54 Ark. 499. On this point appellee testified that he did not intend the conveyance of the land as a gift to his brother, and that nothing was said about the purchase price being a loan. Appellee further testified that he purchased the land at the request of his father, who told him that if he would pay for it, he might have it. The circuit judge found that no gift or loan of money was intended, and that a trust resulted in favor of James Bennett, and we are unable to say that the finding is not supported by the evidence. The evidence clearly shows that James Bennett paid at least seven-tenths of the purchase money. From this fact alone, in the absence of other controlling circumstances, a presumption arises that he intended the purchase for his own benefit, and that the legal title was taken in the name of his brother for the purpose of temporary convenience, and not to deprive him of his beneficial interest. Equity regards substance rather than form. The man who pays the purchase money is in equity supposed to become, or to intend to become, the owner of the property; and, in the absence of proof to rebut such intention, the beneficial title follows that supposed intention, although in form the legal title may be taken in the name of another. *Milner* v. *Freeman*, 40 Ark. 62; *Gainus* v. *Cannon*, 42 *ib.* 503; *Watson* v. *Murray*, 54 *ib.* 499; Merwin's Equity, § 225; Bispham's Equity, § 80; Fetter's Equity, 194.

There is an exception to this rule when the person in whose name the title is taken is one whom the purchaser is under obligation to support, such as a wife or child. In that case an advancement is presumed, and, in the absence of other proof, no trust results. But there is no obligation to support a brother, and this exception does not extend to them, for they are in law regarded as strangers. *Edwards* v. *Edwards*, 39 Pa. 269; *Kline* v. *Ragland*, 47 Ark. 111; *Gainus* v. *Cannon*, 42 *ib.*

*503.* See also *Bennet* v. *Bennet,* L. R. 10 Ch. Div. 474, where this question was discussed by Jessel, M. R.

The facts proved in this case do not, in our opinion, overcome the presumption in favor of James Bennett, male by the proof that he paid the purchase money, supported as that presumption now is by the finding of the circuit judge. The evidence does not clearly show that, at the time this land was bought and the purchase money paid, a gift to Thomas was intended, or that there was any understanding between James and Thomas that the amount paid by James was to be considered as a loan to Thomas. So far as the proof goes to show, Thomas Bennett was not consulted. It is true that he afterwards on several occasions expressed a willingness that James Bennett should sell the land, and get his money. James Bennett also testified that he expected either to get his money or to hold the land. But these statements are not inconsistent with the fact that a trust resulted at the time of the purchase. If, at the time of the purchase, James Bennett intended to hold the beneficial interest in the land for himself, the trust thus resulting would not be released by mere expressions of this kind. It would take something more to divest one of the equitable title to land. *Gainus* v. *Cannon,* 42 Ark. 503; *Edwards* v. *Edwards,* 39 Pa. St. 369. While the intention of James Bennett in purchasing this land is not clearly shown, and although the evidence on this point might to some minds support a different conclusion from that reached by the circuit court, yet certainly the evidence against such finding is not sufficiently strong to justify us in overturning it, and it must stand.

On the other point, as to whether James Bennett paid for seven-tenths or nine-tenths of the land, we entertain more doubt. Both James Bennett and his brother Levi testified that James Bennett paid all the purchase money except twenty-five dollars, which were paid by Levi Bennett. But each of them at first stated that there were only eight of the Neal heirs, and that $175 was the amount paid by James Bennett. Another brother testified that the amount paid by James Bennett was about $140 to $160. Now, there were ten of the Neal heirs, and as each of them was to receive $25, the amount that

11

James Bennett said that he paid would only cover seven-tenths of the purchase money. This is an effort to establish a resulting trust in favor of James Bennett by parol testimony, and to do so it is incumbent upon him to show by evidence, "full, clear and convincing," that the purchase price of the land, or for a certain portion of it, was paid by him. *Johnson* v. *Richardson*, 44 Ark. 365; *Crow* v. *Watkins*, 48 *ib.* 173; 10 Am. & Eng. Enc. Law, 29 and 30.

We feel convinced that he paid seven-tenths of the purchase price for this land, but we are of the opinion that the evidence is not sufficiently convincing to establish a resulting trust in his favor for more than that amount of the land.

The decree of the circuit court will be modified to this extent, and in other respects affirmed, but the cause will be remanded, that a decree may be entered in the Benton circuit court in accordance with this opinion.