## INDIAN LAND & TRUST CO. et al. v. OWEN.

No. 8337—Opinion Filed Dec. 26, 1916.

Rehearing Denied Feb. 6, 1917.

(162 Pac. 818.)

(Syllabus by the Court.)

**1. Creditors' Suit—Aid of Execution.**

By the laws of Arkansas in force in the Indian Territory prior to statehood, suit by a creditor in aid of execution would not lie until the claim was reduced to judgment, and an execution issued and returned nulla bona.

**2. Limitation of Actions—Running of Statute—Creditors' Suit.**

In cases governed by this law, the statute of limitation on a cause of action in the nature of a creditors' bill begins to run from the time an execution on the judgment for the debt is returned nulla bona.

**3. Equity—Stale Claims—What Constitute.**

What constitutes a stale claim in equity is not determined by lapse of time alone, but the question must be determined by the facts and circumstances of each case and according to right and justice.

**4. Creditors' Suit—Actions—Delay.**

Record examined, and held, that what delay there was was not the result of inexcusable neglect on the part of the plaintiff, but was in spite of his diligent efforts to reduce his claims to judgment, in order to be able to proceed in equity to collect his debt. Held, further, that as the nonaction of the plaintiff did not operate to damage the defendants, or to induce them to change their position, no estoppel arises by mere lapse of time.

**5. Creditors' Suit—Aid of Execution.**

Under the statute, as well as the well-settled principles of equity jurisdiction, when a judgment debtor has no personal or real property subject to levy on execution sufficient to satisfy the judgment, any equitable interest which he may have in real estate, or in any money, contracts, choses in action due or to become due to him, or any money, goods, or effects which he may have in the possession of any person, body politic or corporate, shall be subject to the payment of such judgment by action in the nature of a bill of discovery in aid of execution.

**6. Trusts—Following Trust Funds.**

Where there are other shareholders, the officers or board of directors of a private corporation for profit cannot bind the corporation by converting to their own use without authority the corporate funds and assets of the company, and the funds and property so converted may be followed as trust funds of the persons chargeable with such conversion.

**7. Trusts—Resulting Trust.**

When real estate is purchased by a person with the funds of another, the title being taken in the name of the former, a trust is presumed to result in favor of the latter. The trust arises out of the circumstances that the money of the real purchaser, and not of the grantee in the deed, formed the consideration of the purchase and became converted into land.

**8. Trusts—Following Trust Property—Remedies In Aid Of.**

Prior to statehood, a corporation was organized in the Indian Territory for the purpose of buying and selling lands and dealing in agricultural leases for profit. O. became a creditor of the corporation and subsequently obtained judgment against it for the amount of his claim upon which execution was duly issued and returned nulla bona. Thereafter O. commenced a proceeding in the nature of a bill of discovery in aid of his executions at law against the corporation, in which he also joined B. and B. as defendants, upon the following grounds, which were found to be established by the trial court: Shortly after the organization of the corporation, B. and B. acquired a majority of its capital stock, and immediately commenced to act as its board of directors and its president and secretary, respectively; that at all times thereafter B. and B. assumed and exercised full control over the management of the affairs and assets of the company; that from time to time thereafter B. and B. not being creditors, without any authority by the corporation, its board of directors, or managing officers as such, collected large sums of money from persons indebted to the corporation, a portion of which they invested in lands, taking the title in their own names, and the balance of which they retained in their own possession without accounting therefor to the company. Held, that O. by bill of discovery in aid of his executions at law is entitled to follow the funds so converted as trust funds into the hands of B. and B., and also to have the lands purchased by B. and B. as above stated subjected to the payment of his executions. Held, further, that in these circumstances it makes no difference when O.'s debt was created, whether before or after such misappropriation of the corporate funds and assets of the company.

Error from District Court, Muskogee County; R. P. de Graffenried, Judge.

Action by Robert L. Owen against the Indian Land & Trust Company, a corporation, and others. There was a judgment for plaintiff, and defendants bring error. Affirmed.

S. V. O'Hare, Thomas H. Owen, Joseph C. Stone, and Alvin F. Molony, for plaintiffs in error.

W. W. Noffsinger and Y. P. Broome, for defendant in error.

KANE, C. J. Hereafter, for convenience, the defendant in error, Robert L. Owen, will be referred to as the "plaintiff," the plaintiff in error Indian Land & Trust Company, as the "Trust Company," and John S. Bilby and N. V. Bilby as the "Bilbys."

The trust company was a corporation organized under the laws of Arkansas in force in the Indian Territory prior to statehood for the purpose of buying, selling, and dealing in lands and leases in the Indian Territory for profit, the plaintiff being one of its organizers and first president.

On the 23d day of December, 1912, in an action then pending in the district court of Muskogee county, the plaintiff procured a judgment against the trust company in the sum of $18,070.10, and on the 9th day of March, 1914, in another action pending in the same court, the plaintiff recovered another judgment against the trust company in the sum of $8,137. Subsequently execution was issued in each of these cases and returned nulla bona. On the 12th day of April, 1913, the plaintiff commenced this proceeding in the nature of a bill of discovery, in aid of his executions at law, in which he joined the trust company and the Bilbys as defendants. In his petition in this proceeding the plaintiff set up his two judgments, the return of the executions nulla bona, and further alleged in effect: That during the period of time extending from the 9th day of July, 1902, to the time of filing his petition, the Bilbys continuously owned the majority of the capital stock of the trust company, one of them being elected its president, and the other its secretary, and thereafter managed its business and affairs and had immediate charge of all of its assets and exercised exclusive control over its affairs and all its business transactions. That the trust company was organized under the laws of the state of Arkansas, which were extended over and put in force in the Indian Territory, for the purpose of buying, selling, and dealing in agricultural lands and leases in the Indian Territory for profit, and that its assets consisted principally of agricultural leases on 88,000 acres of land situated largely in the Creek Nation. That the Bilbys as majority stockholders and officers of the trust company collected the rents of said lands and failed, neglected, and refused to account to said corporation for the same, and have misappropriated said rentals to their own use, whereby the said corporation has been and is now unable to pay its creditors, and especially this plaintiff. That during the management and control of said corporation by said Bilbys they used a large portion of the aforementioned grazing and cultivated lands for their own individual use,

and never made any report or accounting to the said corporation for the reasonable value of the rents thereof, and the said Bilbys used the property and assets of said corporation during the whole of their management and control of same, not for the benefit of the company and its other stockholders, but for their own individual use and benefit. That said Bilbys have sold a large part of the leases owned by said company for large sums of money and have failed to report and account to said company for the amount received therefor, and have appropriated the same to their own individual use and benefit. After alleging other shortcomings against the Bilbys whereby they acquired in their own name assets belonging to the trust company, the petition prays, in substance: That the Bilbys be required to make a full discovery and disclosure of their management and control of said defendant corporation and of its property and assets in their charge and under their control, and of all the property and assets that have belonged to said corporation and their use and disposition of the same, and that all property and assets of said corporation wrongfully in the hands of said Bilbys be applied to the payment of the judgments in favor of the plaintiff until the same are fully satisfied, and for such other and further relief as to the court may appear just and equitable in the premises after a full and complete hearing of said cause.

Thereafter the trust company and N. V. Bilby each filed separate demurrers to the petition of the plaintiff, and thereafter John S. Bilby filed his separate demurrer thereto, and thereafter, to wit, on the 4th day of November, 1913, the trial court made and entered its order overruling these several demurrers. Thereafter the trust company and the Bilbys filed their joint answer, in form a general denial, and also pleaded the statute of limitations. Thereafter upon trial to the court, findings of fact were made, largely as stated by the plaintiff in his petition as to the organization and purposes of the corporation, the exclusive control of its affairs by the Bilbys, etc., and further to the effect that since January, 1904, the Bilbys collected the proceeds of the leases of said company and used them for their own private use and benefit, and made no accounting to the company of their handling of its property and affairs, and that said defendants are indebted to said company for the use of its property for their own personal benefit, for assets of said company appropriated by them and for rents and profits collected by them from the leases of said company, and for money due by said Bilbys to said company in a sum far in excess of the amount due the plaintiff herein on the judg-

ments hereafter set out, and that said defendants were at the time of the commencement of this action, and are now, so indebted to said company; that in 1904 and 1905 the Bilbys expended the sum of about $16,800 of the trust company's money for the purchase of certain lands, but that, instead of taking the deeds to said lands in the name of the trust company, said deeds were taken in the name of N. V. Bilby. From these findings the court concluded as a matter of law that said money and real estate purchased as aforesaid is the property of said trust company, and said N. V. Bilby holds the title thereto for said company, and said funds and property are liable for the payment of the judgments recovered by plaintiff herein against the company, as hereinbefore set out. In relation to a certain judicial sale whereat it was alleged the Bilbys purchased part of the assets of the trust company, the court found as follows:

"The court in its judgment herein does not pass upon the validity of the sale of certain property of the Indian Land & Trust Company made on the 17th day of March, 1907, under two certain deeds of trust dated February ——, 1905, executed by the Indian Land & Trust Company to W. N. Martin, trustee."

In view of the finding of the trial court as to the part of the assets purchased at this sale, we will lay this branch of the defendants' contention out of the case, and will not further notice it in this opinion.

Upon these findings it was ordered and adjudged by the court:

"That the plaintiff do have and recover of and from the defendants, John S. Bilby and N. V. Bilby and the Indian Land & Trust Company, a corporation, the sum of $30,-237.62, with interest thereon at the rate of 6 per cent. per annum and for the costs of this action. For which let execution issue. It is further considered, ordered, and adjudged by the court that the real estate hereinbefore set out and described is hereby decreed to be the property of the defendant the Indian Land & Trust Company, and liable for the satisfaction of the judgment herein, and in the event the judgment herein is not paid within 30 days from this date an execution issue upon said judgments may be levied on said property and the same put up and sold thereunder, as provided by law. It is further ordered and decreed by the court that upon a sale of said property above described, as herein provided, the defendants and each of them be and they are hereby forever barred and foreclosed of and from any right, title, interest, or estate in or to said real estate."

It is to reverse these findings, and the judgment and decree entered thereon, that this proceeding in error was commenced.

Whilst there are many assignments of error contained in the petition in error filed herein, counsel, who appear jointly for all the defendants, summarize their grounds for reversal in their brief and oral argument as follows: (1) The judgment of March 9, 1914, for $8,137, was barred by the seven-year statute of limitation (section 4470 [section 4471], Mansfield's Digest). (2) This is an equity case. The alleged fraudulent conveyance was made March 17, 1907. Plaintiff filed his petition setting up the judgment of December 23, 1912, for $18,070.10, on April 12, 1913, and his supplemental petition setting up the judgment of March 9, 1914, for $8,137 on May 22, 1915. He pleaded no excuse for the delay. Hence his demands were stale, and the court should refuse him relief whether the delay be less or greater than that named in the statute of limitations. (3) The relation of debtor and creditor is not confidential. The limitations upon the powers of a corporation to deal with its property are precisely the same as the limitations upon individuals or partnerships. Plaintiff, as a creditor, occupies the same position toward the debtor corporation as he would if the debtor were an individual; hence the judgment ought to be reversed for want of pleading and proof of the following essential requirements: (a) Whether the relation of debtor and creditor existed between plaintiff and the Indian Land & Trust Company prior or subsequent to the alleged disposal of the assets of the company; and (b) if subsequent, whether the disposal of the assets was intended to defraud subsequent creditors.

The first ground for reversal was based upon the assumption that the statute of limitations commenced to run against the claims of the plaintiff prior to the time they were reduced to judgment. As it now seems to be conceded that the statute of limitations in force in the Indian Territory did not commence to run against the plaintiff until he had reduced his claim to judgment, it becomes obvious that the judgment of March 9, 1914, could not have been barred by lapse of time under the seven-year statute of limitations. The following authorities are in point to this effect: Meux v. Anthony, 11 Ark. 418, 52 Am. Dec. 274; Phelps v. Jackson, 27 Ark. 589; Sale v. McLean, 29 Ark. 621; Humphreys v. Butler, 51 Ark. 351, 11 S. W. 479; Euclid et al. v. Judkins et al., 66 Ark. 486, 51 S. W. 632; Lester et al. v. Bemis et al., 71 Ark. 379, 74 S. W. 518; Hultberg v. Anderson (C. C.) 170 Fed. 657; Blackwell v. Hatch, 13 Okla. 169, 73 Pac. 933; Ziska v. Ziska, 20 Okla. 634, 95 Pac. 254, 23 L. R. A. (N. S.) 1.

The question whether a claim will be held to be stale in equity must be determined by the facts and circumstances in each case and according to right and justice. What constitutes a stale claim is not determined by lapse of time alone; resulting damage to the other party must also be shown. In the case of Northern Pac. R. Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931, it was held that:

"Ten years' delay on the part of a nonassenting unsecured creditor of an insolvent corporation, before attacking in equity a reorganization plan effected by judicial sale under which a stock interest in the new corporation was reserved for the old stockholders, is not such laches as bars the suit where the corporations and their stockholders were not prejudiced thereby, and the delay was not the result of inexcusable neglect, but was in spite of the creditor's diligent effort to reduce his claim to judgment, so that he might proceed in equity, which was accomplished only after protracted litigation."

It is true that the litigation in the present case has been tedious and long drawn out, but we are convinced that the plaintiff asserted his claims against the corporation in court within a reasonable time, reducing the same to judgment without undue delay, preparatory to filing his creditor's bill. Obviously, such delay as there was was not due to any inexcusable neglect of plaintiff, but occurred in spite of his diligent efforts to put himself in the position of a person entitled to file a proceeding in aid of execution. Moreover, we are unable to see how the trust company or the Bilbys could be prejudiced by nonaction.

The next ground for reversal obviously is the only one upon which counsel for the trust company and the Bilbys seriously rely for reversal. This point is argued with vigor in their very able brief and emphasized by them in their oral argument, and on account of the evident earnestness of counsel in presenting it, and our total inability to concur in the conclusion they reach, we have taken pains to set out with some fullness their theory of their case up to the point of divergence between our views. Counsel quote at length from certain authorities to the effect that a corporation, even though insolvent, may make preferences among its creditors, and that such preferences cannot be successfully attacked by subsequent creditors, whether the creditors preferred be officers and directors of the corporation, or strangers. Among the cases cited to this effect are the following: Worthen v. Griffith, 59 Ark. 562, 28 S. W. 286, 43 Am. St. Rep. 50; Buell v. Buckingham & Co., 16 Iowa, 284, 85 Am. Dec. 516; Planters' Bank v. Whittle et al., 78 Va. 737; Banking Co.

v. Claghorn, 1 Speers, Eq. (S. C.) 545; O'Bear Jewelry Co. v. Volfer, 106 Ala. 205, 17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31; Fogg v. Blair, 133 U. S. 534, 10 Sup. Ct. 338, 33 L. Ed. 721. After discussing these and many other authorities to the same effect, counsel continue:

"This brings us to the main point on this branch of the case, namely the disposal of a corporation of any of its property cannot be questioned by subsequent creditors of the corporation any more than a like disposal of property by an individual can be."

We are unable to perceive the slightest analogy between the authorities cited by counsel and the case presented by the record before us. There is a vast difference between the doctrine announced by these cases, which permits an insolvent corporation to prefer its officers and directors as creditors, without such action being questioned by subsequent creditors, and a rule which would foreclose inquiry into the acts of a corporation for profit, whereby it attempted to give away its assets to its officers and directors, or to a stranger. It is true that, when the corporate transactions complained of are within the general scope of the powers of the company, such as the order in which it shall pay its creditors, etc., but are performed in a manner violative of some limitation of law upon the exercise of the power, they cannot be challenged by those who subsequently become creditors. T., St. L. & K. C. Ry. Co. et al. v. Continental Trust Co. et al., 95 Fed. 497, 36 C. C. A. 155. But, on the other hand, where the transactions are entirely beyond the general scope of the charter powers of the company, they are ultra vires and void ab initio. However, we have not yet quite reached the precise situation presented by the record before us. Here, so far as the record shows, we are not dealing with an insolvent corporation, or inquiring into any transactions between a corporation and its creditors. The corporation has not been dissolved, and, as it answered in this cause and appears in this court by the same counsel representing the Bilbys, it must be assumed that for some purposes, at least, it is still a going concern. Its defense to this proceeding in aid of execution was a general denial; that is, that its officers, the Bilbys, did not collect its moneys and fail to account for them, or use its moneys to purchase land, the legal title to which they took in their own name. There is no claim that the corporation ever preferred the Bilbys as creditors, or that it even intended to sell or give to them any of its property. The evidence shows with conclusiveness, and the court so found, that without authority by the corporation the Bilbys collected large sums of money

belonging to the corporation for which they never accounted, and that they purchased lands from third persons with money belonging to the corporation and took the legal title thereto in their own name. In these circumstances, neither the title to the moneys nor the lands passed from the corporation to the Bilbys. In the first instance, the Bilbys became debtors of the corporation for the amount of money retained, and, in the second, a trust must be presumed to have resulted in favor of the corporation. In a reply brief recently filed, counsel for the trust company and the Bilbys narrow their contention somewhat, as follows:

"The title to personal property passes by delivery of possession as well as by conveyance. The title and assets of the Indian Land & Trust Company (money derived as rents and profits from its leasehold interests) passed to John S. Bilby and N. V. Bilby as to all the world, except the corporation, its stockholders and existing creditors, when they appropriated it to its own use, some of which was used in purchasing land by N. V. Bilby, who took the title thereof in his own name. The legal title passed from the corporation to the Bilbys, and, before Senator Owen may be heard to complain of that disposition, he must allege and prove the existence of the debt at the time of the disposition."

The inapplicability of this argument to the facts disclosed by the record in the case at bar becomes apparent at once when we keep in mind that no personal property passed by delivery of possession from the corporation to the Bilbys. The money not accounted for was delivered to the Bilbys by debtors of the corporation and not accounted for to the corporation, which is scarcely tantamount to a delivery of possession by the corporation. There are circumstances, of course, in which the money or property of a person found in the possession of another will be presumed to be an advancement or gift. This is the rule where the nominal possessor of the property, or the purchaser of the land, is a child or wife of the person from whom the money comes. Milner v. Freeman et al., 40 Ark. 62. But the general rule is that no gift was intended. The man who furnishes the purchase money is in equity supposed to become, or intended to become, the owner of the property; and, in the absence of proof to rebut such intention, the beneficial title follows that supposed intention, although in form the legal title may be taken in the name of another. Camden et al. v. Bennett, 64 Ark. 155, 41 S. W. 854; Milner v. Freeman, supra; Watson v. Murray, 54 Ark. 499, 16 S. W. 293.

In such cases, the trust arises out of the circumstances that the money of the real purchaser, and not of the grantee in the

deed formed the consideration of the purchase and became converted into land. Milner v. Freeman, supra. And the rule is the same where the title is taken in the name of a third person without the consent of the person by whom the purchase money is paid; that is, a trust results in favor of the latter. 15 A. & E. Enc. L. (2d Ed.) 1138; Watson v. Murray, supra. In the case at bar, the act of the Bilbys constituted a plain misappropriation of corporate funds. The corporation was not dissolved, or, so far as appears, to be dissolved, and the Bilbys were not creditors. It was simply a case of trustees who were in possession and control of corporate funds donating such funds to themselves without the formality of a vote by the directors or the other shareholders, or the slightest semblance of authority by the corporate authorities acting as such. It is settled that such misappropriation cannot be condoned or ratified except by the unanimous consent of the shareholders. 1 Morawetz on Corporations, sec. 499; Brick Co. v. Schoeneich, 65 Mo. App. 283; Ashton v. Dashaway Ass'n et al., 84 Cal. 61, 22 Pac. 660, 23 Pac. 1091, 7 L. R. A. 809; Hazard v. Durant, 11 R. I. 196.

Having reached the conclusion that the legal effect of the unauthorized acts of the Bilbys was to constitute them debtors of the corporation as to the moneys appropriated and not accounted for, and trustees of a resulting trust as to the real estate purchased with the money of the corporation, the only remaining question is: In these circumstances, what are the rights of the plaintiff as a judgment creditor of the trust company? Although the court found that the plaintiff was an existing creditor of the trust company at the time of the unauthorized misappropriations by the Bilbys, counsel contend there is no evidence in the record to support this finding, and therefore we must assume that he was a subsequent creditor. Although it is a severe tax upon our credulity to assume that the plaintiff, who was one of the organizers of the trust company, and its first president, continued to transact business with the corporation on the large scale indicated by these judgments after the Bilbys gained control thereof, and commenced to treat its assets as their own, we will not search the record for the purpose of ascertaining whether the finding of the court on this point is sustained by the evidence, for we deem it unimportant whether the plaintiff was an existing or subsequent creditor of the trust company, in view of the conclusion we have reached as to the nature of the legal relation which arose out of the transactions hereinbefore set out. Section 3084, Mansfield's Digest, in force in the Indian Territory prior to statehood, and section 5189, Rev. Laws Okla. 1910, the remedial statute in force in the state after the adoption of the Constitution, are, in effect, the same, and they in turn are but declaratory of the remedies of the parties, and the powers of the courts as they existed before, upon the well-defined principles of equity jurisprudence. These statutes provide in effect that, after an execution is returned nulla bona, the judgment creditor may institute an action for the discovery of any money, choses in action, equitable or legal interest, and all other property to which the defendant is entitled and for subjecting the same to the satisfaction of the judgment; and, in such actions, persons indebted to the defendant in the execution or holding the money or property in which he has an interest may be also made defendants. The rights and remedies of the parties herein, under the statutes and as they exist upon the well-defined principles of equity, are well stated in the opinion in Carey et al. v. Winslow, 30 Okla. 780, 122 Pac. 174, as follows:

"It is the law that a creditor cannot set aside a conveyance of his debtor's property made before his claim originated, unless it was made in contemplation of incurring indebtedness, and with the design to defraud the subsequent creditor. The authorities cited in the brief of plaintiff in error (defendant below), as well as numerous others, fully sustain this proposition; but these authorities apply to cases where there has been an actual transfer of the beneficial interests in the property, and do not apply to this case.

"In this case the court found that the stock was conveyed to Jamison, and was conveyed to be held by him in trust for Carey, and that therefore Carey was the beneficial or equitable owner. In other words, the judgment debtor never parted with the beneficial ownership or equitable title. That remained in him, and was subject to all his debts in whosesoever hands they might be, just as all his other property was subject to his debts. In Perry on Trusts, sec. 160, it is said: 'A very common case of a resulting trust is where the owner of both the legal and equitable estate conveys the legal title only without conveying an equitable interest.'

"As the equitable ownership in the property remained in Carey, it was proper to subject it to the payment of the debt. Snyder's Compiled Laws 1909, sec. 6006. It makes no difference, then, when the plaintiff's debt was created, whether before or after the conveyance of the legal title to Jamison. Carey remained the beneficial owner of the property, and it was at all times subject to his debts, and would be subject to a debt that he would make now if he still owned it in the same way. In the case of Newman v. Van Duyne, 42 N. J. Eq. 485, 7 Atl. 897, the court said: 'It may be added that it does not appear when the com-

plainant's debt was contracted, whether before or after the conveyance. But, if the conveyance was made in trust for the debtor, it makes no difference whether the debt was contracted before or after the making of the conveyance.' In the case of Burke v. Tewksbury, 3 Neb. (Unof.) 739, 92 N. W. 726, the court said: 'The first contention of the appellants is that the petition fails to state a cause of action, for the reason that it contains no allegation to the effect that at the time the title of the property was taken in the name of Alvira C. Tewksbury, her codefendant was insolvent, nor that he was in any manner indebted to the appellee at that time. This is not an action to set aside a fraudulent conveyance, but to subject certain property, of which it is alleged one of the defendants stands seized to the use of the other, to the satisfaction of a judgment against the latter. The gist of the action is whether the title is held in trust for the benefit of the judgment debtor. If it is, he is the real owner, and the property is liable for the satisfaction of his debts, whether he was insolvent or indebted to the judgment creditor when the trust was created or not.' "

The following authorities are also in point to the same effect: Deimel v. Brown, 136 Ill. 586, 27 N. E. 44; Kelley v. Bell, 172 Ind. 590, 88 N. E. 58; Arbuckle et al. v. Columbia et al., 150 Ala. 271, 43 South. 781; 6 Stand. Ency. Pro. p. 208; 5 Ency. Plead. & Prac. 408, 452; Union Coal Co. v. Wooley, 54 Okla. 391, 154 Pac. 62.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.